IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN LEWIS,                                    3:16-CV-00241-BR

        Plaintiff,                              OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

        Defendant.


**JEFFREY HUGH BAIRD**
Dellert Baird Law Office, PLLC
524 Tacoma Ave S.
Tacoma, WA 98402
(360) 329-6968

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-3621

       Attorneys for Defendant


**BROWN, Judge.**

       Plaintiff Steven Lewis seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles XVI and II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings.


### ADMINISTRATIVE HISTORY

       Plaintiff filed his applications for DIB and SSI on July 6, 2012.  Tr. 254, 258.[1]  Plaintiff alleged a disability onset date of March 15, 2009.  His applications were denied

---

       [1] Citations to the official transcript of record filed by the Commissioner on June 17, 2016, are referred to as "Tr."

2 - OPINION AND ORDER

initially and on reconsideration.  An Administrative Law Judge
(ALJ) held a hearing on July 31, 2014.  Tr. 57-112.  At the
hearing Plaintiff was represented by an attorney.  Plaintiff, a
lay witness, and a vocational expert (VE) testified at the
hearing.

The ALJ issued a decision on August 15, 2014, in which he
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 36-51.  Pursuant to 20 C.F.R. § 404.984(d),
that decision became the final decision of the Commissioner on
January 28, 2016, when the Appeals Council denied Plaintiff's
request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103,
106-07 (2000).


## BACKGROUND

Plaintiff was born on March 26, 1984, and was 30 years old
at the time of the hearing.  Tr. 272.  Plaintiff graduated from
high school.  Tr. 62.  Plaintiff has past relevant work
experience as a price marker.  Tr. 50.  Plaintiff alleges
disability due to various mental-health impairments, a seizure
disorder, and obesity.  Tr. 41-42.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 48-49.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648
F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648
F.3d at 724.  The criteria for the listed impairments, known as
Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform

work he has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since his March 15, 2009, alleged
onset date.  Tr. 41.

At Step Two the ALJ found Plaintiff has the severe
impairments of organic brain syndrome, seizure disorder, and
obesity.  Tr. 41.

At Step Three the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 24.  The ALJ found Plaintiff has the RFC to perform a
full range of work at all exertional levels.  Tr. 44.  The ALJ,
however, found Plaintiff should never work at heights or climb
ladders, ropes, or scaffolds.  Tr. 44.  The ALJ also found
Plaintiff is "able to remember, understand, and carryout [*sic*]
instructions and tasks generally required by occupations with an
SVP of 1-2" and he should be limited to jobs that do not require
"more than infrequent reading; . . . occasional superficial
interaction with the general public; [and] . . . occasional
interaction with coworkers and supervisors."  Tr. 45.  The ALJ
found Plaintiff could not perform "job tasks [that] require
independent goal setting or planning" and Plaintiff's "job tasks
should be primarily non verbal [*sic*] with little need for
instruction once learned."  Tr. 45.

At Step Four the ALJ concluded Plaintiff could perform his
past relevant work as a price marker.  Tr. 50.

At Step Five the ALJ concluded, in the alternative, that
Plaintiff could perform jobs that exist in significant numbers in
the national economy.  Tr. 50.  Accordingly, the ALJ found
Plaintiff is not disabled.

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) improperly weighed the opinions of Plaintiff's treating and examining physicians and (2) improperly weighed lay-witness opinions.

## I.    The ALJ's analysis of Plaintiff's treating and examining psychologists and physicians.

Plaintiff alleges the ALJ erred when he (1) gave "little weight" to the December 2010 opinion of Jay Edwards, Ph.D., examining psychologist; (2) gave "some weight" to the May 2012 opinion of Bruce Boyd, Ph.D., examining psychologist; (3) gave "little weight" to the opinions of Sarah Rahkola, M.D., treating physician; and (4) gave "some weight" to the May 2014 opinion of Amanda Ragonesi, Psy.D., examining psychiatrist.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

### A.    Dr. Edwards's Opinion

Dr. Edwards evaluated Plaintiff on November 2, November 16, and December 14, 2010.  In December 2010 Dr. Edwards issued a Psychological Assessment in which he noted Plaintiff's record indicates "a lifelong history of significant delays in language, motor, memory and academic skill development." Tr. 440.  Dr. Edwards concluded his evaluation as follows:

> [R]econfirmed [Plaintiff's] strengths in visual construction, visual problem solving and visual reasoning with his WAIS-IV PRI score in the average range.  In stark contrast, [Plaintiff] continues to show deficiencies in expressive and receptive language . . ., Working Memory . . ., and learning disabilities in Reading . . ., Mathematics . . . and Written Expression.  It is unlikely that he will be successful in any area of post-secondary education or training that requires reading, writing or math skills beyond the middle school level, without significant remediation and accommodation.

Tr. 443.  Dr. Edwards suggested Plaintiff "may find a Community College training program in welding, auto repair, or something that plays to his strengths with hands on [sic] construction, that is able to offer him support with the academic aspects of the curriculum."  Tr. 443.

Although the ALJ gave little weight to Dr. Edwards's opinion, the ALJ failed to point out or to identify any specific reason for doing so based on substantial evidence in the record. Defendant concedes the ALJ did not identify specific reasons for giving little weight to Dr. Edwards's opinion, but Defendant

asserts it was not error because Dr. Edwards's opinion does not identify any specific limitations caused by Plaintiff's impairments that the ALJ failed to incorporate into his assessment of Plaintiff's RFC.

An ALJ is not required to discuss all of the evidence in the record.  He must, however, explain his rejection of significant, probative evidence.  *See York-Spann v. Astrue*, 400 F. App'x 207, 208 (9th Cir. 2010)("An ALJ must explain why significant probative evidence has been rejected.").  Dr. Edwards diagnosed Plaintiff with impairments that the ALJ found to be severe, and Dr. Edwards concluded Plaintiff's neurocognitive issues impacted his ability to succeed in an academic or work environment. Tr. 41.  Dr. Edwards's findings were significant and probative of Plaintiff's functioning and should have been addressed by the ALJ.

On this record, therefore, the Court concludes the ALJ erred when he failed to set out specific, legitimate reasons for giving Dr. Edwards's opinion little weight based on substantial evidence in the record.

### B.   Dr. Boyd

On March 26, 2012, Dr. Boyd conducted an evaluation of Plaintiff to determine "whether he is eligible for Developmental Disabilities (DD) Services."  Tr. 458.  Dr. Boyd diagnosed Plaintiff with a cognitive disorder.  Dr. Boyd stated Plaintiff

"functions in the Severe range of impairment.  This is well below
what his overall IQ would predict.  The most likely contributor
to this deficit is chronic memory problems."  Tr. 462.  Dr. Boyd
opined Plaintiff is markedly limited in his ability "to maintain
attention and concentration for extended periods" and "to sustain
an ordinary routine without special supervision."  Tr. 464.

          The ALJ gave some weight to Dr. Boyd's opinion that
Plaintiff is markedly limited in his ability "to maintain
attention and concentration for extended periods" and "to sustain
an ordinary routine without special supervision."  Tr. 48.  The
ALJ, however, noted Dr. Boyd's opinion in those areas was
inconsistent with Plaintiff's activities of daily living.  For
example, Plaintiff reported to Dr. Boyd that he "can spend eight
hours a day [playing] video games."  Tr. 459.  Similarly, Rodney
Gregg, Plaintiff's County Service Coordinator, testified at the
hearing that Plaintiff "is limited on focus and direction on what
to do outside of his living environment . . . other than
preferred activities. . . .  Part of his diagnosis . . . is that
. . . it's hard for [Plaintiff] to actually concentrate on
anything [that] he's not interested in."  Tr. 101-02.

          The ALJ noted Plaintiff successfully worked at his
"last job" loading and unloading freight without any special
supervision.  Tr. 48, 647-50.  Plaintiff also worked for four
months at Fry's "price marking" products.  Tr. 67-68.  Plaintiff

asked for a promotion at Fry's, received a promotion, and moved
onto the sales floor, which resulted in him quitting because it
was not a good fit for him due to his memory and cognitive
issues.  Tr. 69-70.

On this record the Court concludes the ALJ did not err
when he gave some weight to Dr. Boyd's opinion because he
provided clear and convincing reasons based on substantial
evidence in the record for doing so.

**C.   Dr. Rahkola**

On October 24, 2012, Dr. Rahkola, Plaintiff's treating
physician, submitted a letter of "formal appeal" for the denial
of Plaintiff's applications for SSI and DIB.  Dr. Rahkola stated
Plaintiff "displays consistent and pervasive difficulties with
short-term memory and cognition that have made it difficult for
him to complete 'Instrumental Activities of Daily Living' without
constant assistance."  Tr. 693.  Dr. Rahkola also stated
Plaintiff "has been unable to maintain employment due to these
disabilities."  Tr. 693.

On July 21, 2014, Dr. Rahkola completed a Medical
Source Statement in which she opined Plaintiff suffered from a
marked inability to understand and to remember detailed
instructions, to carry out detailed instructions, to "deal with
stress of semi-skilled and skilled work," to "respond
appropriately to changes in a routine work setting," to travel in

13- OPINION AND ORDER

unfamiliar places, and to "set realistic goals or make plans
independently of others."  Tr. 731-32.

     The ALJ gave little weight to Dr. Rahkola's opinions on
the grounds that Dr. Rahkola did not cite "any objective basis or
to [*sic*] support her opinions [and] she has taken on an advocacy
role, which undercuts the reliability of her assessments."
Tr. 48.

     Dr. Rahkola's October 2012 opinion is one page and does
not reference the medical record.  Dr. Rahkola states she has
been Plaintiff's treating physician since October 2010, states
she is "familiar with his medical history and developmental
background," and asserts her opinion is consistent with
Dr. Boyd's neuropsychiatric assessment.  Tr. 693.  Dr. Rhakola
notes she sees Plaintiff two-to-three times per year.  Thus, in
October 2012 she had seen Plaintiff approximately 4-6 times.
Dr. Rahkola's July 2014 Medical Source Statement is a check-the-
box form.  "The ALJ need not accept the opinion of any physician,
including a treating physician, if that opinion is brief,
conclusory, and inadequately supported by clinical findings."
*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

     In addition, "an ALJ may reject a treating physician's
opinion [when] the physician has shifted roles from a medical
provider to a disability advocate for a plaintiff."  *Stein v.
Comm'r Soc. Sec. Admin.*, 6:15-cv-00894-YY, 2016 WL 6902345, at *6

(D. Or. Nov. 23, 2016)(citing *Bagoyan Sulakhyan v. Astrue*, 456 F.
App'x 679, 682 (9th Cir. 2011); *Buckner–Larkin v. Astrue*, 450 F.
App'x 626, 628 (9th Cir. 2011); *Pryor v. Barnhart*, 137 F. App'x
955, 957 (9th Cir. 2005)).  As noted, Dr. Rahkola's October 24,
2012, opinion was "a formal appeal of [the] denial of
[Plaintiff's] application for Social Security Disability."
Tr. 693.  In her opinion Dr. Rahkola stated Plaintiff

> requires SSD in order to provide stable housing,
> longer-term availability of medical insurance, and
> assistive brokerage support.  At this time he has
> family members "filling the gap", and these kind
> individuals are in danger of losing their own
> means of support and the safety of their living
> environments in order to provide for [Plaintiff]
> what we are requesting from the Social Security
> Administration.

Tr. 693.  These statements in Dr. Rahkola's letter suggest
Dr. Rahkola "stepped out of the treating [physician] role to
become an advocate for [her] patient in presenting a meaningful
petition for Social Security benefits," and, therefore, the ALJ
was "entitled to give less weight to [Dr. Rahkola's] medical
opinion."  *Krauser v. Colvin*, 2:16-cv-00059-RBL-DWC, 2016 WL
6694066, at *5 (W.D. Wa. Oct. 26, 2016)(citing *Matney v.
Sullivan*, 981 F.2d 1016, 1020 (9t Cir. 1992); *Helmke v.
Astrue*, 371 F. App'x 748, 749 (9th Cir. 2010); *Lewin v. Colvin*,
No. 6:15-CV-00474-TC, 2016 WL 3267287, at *5 (D. Or. June 6,
2016)).

  Accordingly, the Court concludes the ALJ did not err

when he gave little weight to the October 2012 and July 2014
opinions of Dr. Rahkola because he provided clear and convincing
reasons based on substantial evidence in the record for doing so.

### D.    Dr. Ragonesi

In May 2014 Dr. Ragonesi conducted a psychological
evaluation of Plaintiff.  Dr. Ragonesi noted Plaintiff "continues
to struggle with verbal reasoning skills and working memory
tasks."  Tr. 707.  Specifically, Dr. Ragonesi noted Plaintiff's
"[r]esults from memory testing were . . . reflective of deficits
in [Plaintiff's] ability to attend to, hold, and process
information in short-term memory.  Results from achievement
testing were reflective of deficits in mathematic skills . . .,
passage comprehension, reading fluency, and writing ability."
Tr. 708.  Dr. Ragonesi opined Plaintiff's

> learning and working memory difficulties are
> likely to negatively impact his ability to
> function in a typical work setting. . . .  He is
> likely to continue to struggle with learning work
> related tasks/procedures due to struggles with
> working memory.  He is also likely to have
> difficulty remembering and completing multi-step
> instructions across setting [*sic*].

Tr. 708.  Dr. Ragonesi noted Plaintiff "is likely to benefit from
having ample time to process new information" and "may benefit
from having information in writing to refer to as needed."
Tr. 708.

The ALJ gave Dr. Ragonesi's opinion some weight.
Specifically, the ALJ gave weight to Dr. Ragonesi's objective

16- OPINION AND ORDER

testing, "which shows major deficits in reading, written
expression, and spelling as well as processing verbal
information." Tr. 49. The ALJ accommodated those limitations in
his assessment of Plaintiff's RFC. The ALJ gave "less weight" to
Dr. Ragonesi's opinion that Plaintiff has marked limitations in
his ability to complete a normal work day without interruptions
from psychologically-based symptoms, to perform at a consistent
pace without an unreasonable number and length of rest periods,
to accept instructions and to respond appropriately to criticism
from supervisors, and to respond to changes in a routine work
setting. In his weighing of Dr. Ragonesi's opinion, the ALJ
noted Dr. Ragonesi relied in part on interviews with Plaintiff's
mother during the assessment, and the record reflects Plaintiff's
mother "has a vested interest in . . . [Plaintiff's] disability
and has encouraged him not to seek full-time employment."
Tr. 49. Dr. Ragonesi noted Plaintiff was "initially reluctant to
discuss his concerns" and "attempted to defer to his mother."
Tr. 700. In addition, Plaintiff "continued to rely upon his
mother to provide details, especially dates, of his psychological
history." Tr. 700. The record reflects Plaintiff's mother
provided Dr. Ragonesi with information related to her pregnancy,
Plaintiff's early childhood, Plaintiff's dates of employment, and
the assistance she provided to Plaintiff with his activities of
daily living. The record, however, also reflects Dr. Ragonesi

17- OPINION AND ORDER

conducted several tests and provided more than ten pages of
narrative setting out her evaluation of Plaintiff's test results
and Plaintiff's impairments.  When

> a treating provider's opinions are based "to a
> large extent" on an applicant's self-reports and
> not on clinical evidence, and the ALJ finds the
> applicant not credible, the ALJ may discount the
> treating provider's opinion.  However, when an
> opinion is not more heavily based on a patient's
> self-reports than on clinical observations, there
> is no evidentiary basis for rejecting the opinion.

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)(citations
omitted).  There is not any indication in the record that
Dr. Ragonesi relied more extensively on the statements of
Plaintiff's mother than on the medical records of Plaintiff that
Dr. Ragonesi reviewed, the interview she conducted, the results
of Plaintiff's mental-status examination, or the testing she
administered.  Thus, the Court concludes the ALJ did not provide
a legitimate reason to discount portions of Dr. Ragonesi's
opinion.

        The ALJ also found the marked limitations assessed by
Dr. Ragonesi are inconsistent with the record, with Plaintiff's
work experience at Fry's, and with his work experience at his job
unloading freight.  As noted, the record reflects Plaintiff
performed well at his jobs at Fry's and unloading freight.  In
fact, Plaintiff asked for and received a promotion at Fry's and
quit only after the position to which he was promoted proved to
be too complex for him.  Plaintiff's RFC as assessed by the ALJ

18- OPINION AND ORDER

includes limitations that would indicate Plaintiff could not perform the job to which he was promoted at Fry's.

On this record the Court concludes the ALJ did not err when he gave some weight to Dr. Ragonesi's opinion.

## II. The ALJ's evaluation of lay-witness statements and testimony.

Plaintiff alleges the ALJ erred when he gave "little weight" to the statements of Chrissy Fuchs, M.S.W., and Sally Martin, L.C.S.W., and to the testimony of Rodney Gregg.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 416.902.  Medical sources classified as "not acceptable" include, but are not limited to, . . . licensed clinical social workers. . . .  SSR 06-03p, at *2.  The ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source.  SSR 06-03p, at *5-6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511

(9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the
testimony of friends and family members."). The ALJ's reasons
for rejecting lay-witness testimony must also be "specific."
*Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### A. Chrissy Fuchs

Chrissy Fuchs was Plaintiff's Service Coordinator with
Yamhill County Community Developmental Disabilities Program. At
some point Fuchs wrote a letter containing information she
believed would be "helpful in the decision making process
regarding [Plaintiff's] eligibility for SSI/SSDI." Tr. 718.
Fuchs explained she had worked with Plaintiff since June 2012 to
"access services needed to support him that are directly related
to his developmental disability." Tr. 718. Fuchs noted
Plaintiff "required the assistance of a professional job
developer and job coach to secure a job unloading/loading
freight. He was unable to maintain the job . . . due to his
limitations in understanding the part-time, on-call schedule and
recordkeeping requirements of the independent contractor work."
Tr. 718. Fuchs also noted Plaintiff "struggled to communicate
. . . [with] his supervisor and the job coach." Tr. 718.

The ALJ gave little weight to Fuchs's letter on the
ground that the record reflects Plaintiff performed well at the

20- OPINION AND ORDER

job loading and unloading freight, "but there were concerns about the effect of his work on [his] eligibility for benefits." Tr. 49.  In addition, the ALJ noted he accounted for Plaintiff's communication problems in his evaluation of Plaintiff's RFC.

On this record the Court concludes the ALJ did not err when he gave little weight to Fuchs's letter because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.  Sally Martin**

Sally Martin was Plaintiff's Vocational Rehabilitation Counselor from April 2014 until July 2014.  On July 17, 2014, Martin completed a letter form provided by Plaintiff in which she indicated Plaintiff is markedly limited in his ability "to maintain attention and concentration for extended periods," to "sustain an ordinary routine without special supervision," to "interact appropriately with the general public," to "get along with coworkers or peer without distracting them or exhibiting extreme behaviors," and to "respond appropriately to changes in the work setting."  Tr. 727.  Martin stated Plaintiff was "unable to keep jobs" due to "his limited ability to learn, follow instructions, recall information, communicate & interact effectively & maintain effective work habits."  Tr. 727.

The ALJ gave little weight to Martin's letter on the ground that her opinion is "inconsistent with objective testing

and the overall medical evidence of record." For example, the ALJ noted the record reflects Plaintiff left his various previous jobs for reasons unrelated to his disability, "which suggests . . . his actual functioning is inconsistent with marked limitations." Tr. 49.

On this record the Court concludes the ALJ did not err when he gave little weight to Martin's letter because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

### C. Rodney Gregg

Yamhill County Developmental Disabilities Service Coordinator Rodney Gregg testified at the July 31, 2014, hearing. Gregg testified he helps Plaintiff "get connected with services" and "navigate the bureaucracy for [Plaintiff] to . . . apply for services that he needs." Tr. 96. Gregg stated Plaintiff's "short-term and long-term memory is impaired." Tr. 100. Gregg opined "unless the . . . work environment was very catered to [Plaintiff], he would not be very successful. He would need continual ongoing support to maintain a job." Tr. 102. Gregg testified Plaintiff could do "one simple thing and learn it very quickly, but if it was . . . three, four, five multiple steps, he would get the first couple of steps and then . . . forget the rest of it and then it would take longer to keep building on it . . . . And then the repetitiveness would become boring and

distracting and then [Plaintiff] would lose interest." Tr. 103.

The ALJ gave little weight to Gregg's testimony on the grounds that it was inconsistent with Dr. Ragonesi's objective testing in which Plaintiff tested in the low-to-average range on memory. Tr. 47. The ALJ also noted Gregg's testimony indicated Plaintiff "does what he is interested [in] such as playing video games for 8 hours a day. He does not do what he is not interested in such as laundry." Tr. 47. The ALJ also accounted for Plaintiff's memory and learning issues with limitations in his evaluation of Plaintiff's RFC.

On this record the Court concludes the ALJ did not err when he gave little weight to Gregg's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.


**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

23- OPINION AND ORDER

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman*, 211 F.3d at 1178.  The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

The Court has concluded the ALJ erred when he gave "little
weight" to Dr. Edwards's December 2010 opinion without providing
legally sufficient reasons for doing so.  It is not clear on this
record, however, whether the ALJ would have found Plaintiff

24- OPINION AND ORDER

disabled if the ALJ had fully credited Dr. Edwards's opinion. The Court, therefore, concludes this matter must be remanded.

Accordingly, the Court remands this matter for further administrative proceedings consistent with this Opinion and Order specifically to allow the ALJ to determine whether Plaintiff is disabled if Dr. Edwards's opinion is credited fully.

## <u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of December, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

25- OPINION AND ORDER